## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARLON PATTERSON,
      Petitioner,

        v.

UNITED STATES,
      Respondent.

No. 3:16-cv-1052 (SRU)

## RULING AND ORDER ON MOTION TO VACATE, SET ASIDE, OR CORRECT CONVICTION

Marlon Patterson, currently confined in United States Penitentiary Allenwood, filed the instant motion to vacate, set aside, or correct his conviction ("habeas petition") pursuant to 28 U.S.C. § 2255.  Patterson contends that his conviction and sentence for violating 18 U.S.C. § 924(c) should be vacated because the offense on which that conviction is predicated—Hobbs Act Robbery under 18 U.S.C. § 1951(a)—does not qualify as a crime of violence as defined in 18 U.S.C. § 924(c)(3), and because his counsel rendered constitutionally defective assistance by failing to raise that argument.

Based on the entire record and for the reasons that follow, I conclude that Patterson's arguments are without merit and that there is no need to hold a hearing.  Patterson's habeas petition is therefore **denied**.

## I.      Legal Standard

Section 2255 provides a prisoner in federal custody an opportunity to challenge the legality of his or her sentence.  To obtain relief under section 2255, a petitioner must show that his or her prior sentence was invalid because: (1) it was imposed in violation of the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) it

exceeded the maximum detention authorized by law; or (4) it is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).

The standard is stringent; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner.  *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993) (internal citations omitted); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to section 2255 petitions).  The petitioner bears the burden of proving that he or she is entitled to relief by a preponderance of the evidence.  *Blackmon v. United States*, 2019 WL 3767511, at *4 (D. Conn. Aug. 9, 2019) (citing *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000)).

A federal prisoner may not use a section 2255 petition to relitigate questions that were expressly or impliedly resolved during a direct appeal, unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2013) (internal citations omitted); *see also United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal.").  A petitioner is also barred from raising a claim on habeas review that was not properly raised on direct review unless the petitioner is able to show "cause and actual prejudice" or "actual innocen[ce]."  *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations and quotation marks omitted).  A petitioner may, however, bring a claim of ineffective assistance of counsel that was not raised previously at trial or on appeal.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

Under section 2255, a petitioner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. §

2255(b).  "Mere generalities or hearsay statements will not normally entitle the applicant to a hearing . . . The petitioner must set forth specific facts which he is in a position to establish by competent evidence."  *Dalli v. United States*, 491 F.2d 758, 760–61 (2d Cir. 1974) (citations omitted).  In the absence of supporting facts, the court may resolve a petitioner's claims without a hearing.  *See id.* at 760–62.

## II.    Background

On May 12, 2014, a grand jury returned a fourteen-count indictment charging Patterson, among others, with various narcotics, firearms, and Hobbs Act Robbery offenses.  *United States v. Patterson*, No. 13-cr-146 ("Criminal Action"), Second Superseding Indictment, Doc. No. 119.[1]

On May 1, 2015, Patterson pled guilty to Counts Two, Three, and Six of the indictment, charging him, respectively, with:

> (1) Interference with commerce by robbery, in violation of 18 U.S.C. §§ 1951(a) and Section 2 (Hobbs Act Robbery) [Count Two];[2]
>
> (2) Use of a firearm during and in relation to a crime of violence—namely, interference with commerce by robbery as charged in Count Two—in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and Section 2 [Count Three]; and
>
> (3) Attempted Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951(a) and Section 2 [Count Six].

*Id.*, Plea Agreement, Doc. No. 488.

---

[1] Unless otherwise indicated, docket citations refer to the instant habeas proceeding: 16-cv-1052.

[2] Under the Hobbs Act, "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."  18 U.S.C. § 1951(a).

Robbery is, in turn, defined as: "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining."  18 U.S.C. § 1951(b)(1).

Under the plea agreement, Patterson waived his rights to appeal or collaterally attack his conviction. *Id*. at 6. Patterson also waived his rights to appeal or collaterally attack his sentence if the sentence did not exceed 240 months, a five-year term of supervised release, a $300 special assessment, a $125,000 fine, and restitution as determined by the court. *Id*.

On March 24, 2016, I sentenced Patterson to a total of 192 months of imprisonment: a term of 108 months on Counts Two and Six, to run concurrently, and a term of 84 months on Count Three, to run consecutive to his sentence on Counts Two and Six. Criminal Action, Judgment, Doc. No. 505. I also imposed supervised release for a total term of three years on Counts Two and Six, and for a term of five years on Count Three, all to run concurrently, as well as a special assessment of $300. *Id*. Patterson did not pursue an appeal.

On June 24, 2016, Patterson filed a *pro se* motion to vacate his sentence based, in part, on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*"),[3] which struck down the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), as unconstitutionally vague.[4] *See* Mot., Doc. No. 1, at 6, 8. Patterson argued that *Johnson II*'s holding should be extended to the "residual clause" of 18 U.S.C. § 924(c), which defines a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *See id*. Without that clause, Patterson averred, his Hobbs Act Robbery offense—on which his section 924(c) conviction rested—was not a "crime of violence" under

---

[3] I refer to the case as *Johnson II* to distinguish it from *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*").

[4] The ACCA increases prison terms for those who have three or more prior convictions for a "serious drug offense" or a "violent felony." *Johnson II*, 135 S. Ct. at 2555 (citing 18 U.S.C. § 924(e)(1)). The ACCA defines "violent felony" as follows: "any crime punishable by imprisonment for a term exceeding one year . . . that . . . (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." *Id*. at 2555–56 (citing § 924(e)(2)(B)) (emphasis in original). The italicized language is known as the ACCA's "residual clause." *Id*. at 2556.

section 924(c).  *See id.*  According to Patterson, his section 924(c) conviction and sentence therefore could not stand.  *See id.*

On June 14, 2017, Patterson's counsel filed an amended motion, reiterating Patterson's argument that the residual clause of section 924(c) is unconstitutionally vague under *Johnson II*.  *See* Am. Mot., Doc. No. 9.  In the motion, Patterson acknowledged that the Second Circuit in *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016) ("*Hill I*"), *amended and superseded by United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), held that Hobbs Act Robbery categorically qualifies as a crime of violence under section 924(c)'s "elements clause,"[5] and that the residual clause was not void for vagueness based on *Johnson II*.  *Id.* at 2.  Patterson maintained, however, that the *Hill I* decision was not yet final in light of a petition for rehearing filed on September 16, 2016, and that, in any event, the *Hill I* decision was wrong on both issues.  Am. Mot., Doc. No. 9-1, at 3–13.

On September 5, 2017, the parties filed a motion to stay pending the outcome of *Sessions v. Dimaya*, a case in which the Supreme Court would decide whether the residual clause set forth in 18 U.S.C. § 16(b) is unconstitutionally vague.  Mot. to Stay, Doc. No. 10.  I granted the motion on September 13, 2017.  Order, Doc. No. 11.  In April 2018, the Supreme Court ruled that section 16(b) was indeed unconstitutionally vague, *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and the stay was thereafter lifted, doc. no. 14.

The legal landscape continued to evolve following *Dimaya*.  In August 2018, the Second Circuit issued an amended decision in *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018) ("*Hill II*"), which reached the same holding as the original decision: that Hobbs Act Robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property

---

[5] The "elements clause," 18 U.S.C. § 924(c)(3)(A), defines a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

of another" and thus is a categorical crime of violence under section 924(c)'s elements clause. Significantly, however, the Court declined to express a view regarding whether the statute's residual clause was void for vagueness as applied to Hobbs Act Robbery. *Id*. at 53 n.2.

In September 2018, the Second Circuit took up the question of whether section 924(c)'s residual clause is unconstitutionally vague in *United States v. Barrett. See* 903 F.3d 166 (2d Cir. 2018), *cert. granted, judgment vacated*, 139 S. Ct. 2774 (2019), *and abrogated by United States v. Davis*, 139 S. Ct. 2319 (2019). Reasoning that the determination of whether a predicate offense is a crime of violence under the residual clause can be a conduct-specific rather than categorical inquiry, the Court held that *Dimaya* and *Johnson II* did not compel a conclusion that the residual clause was void for vagueness. *Id*. at 178–85. In so holding, the Second Circuit deepened a dispute among circuit courts regarding the constitutionality of the residual clause.

In December 2018, the government filed an opposition to Patterson's amended motion. Opp. to Am. Mot., Doc. No. 16. The government principally argued that: (1) Patterson waived his rights to challenge his conviction and sentence under the plea agreement; (2) Hobbs Act Robbery qualifies as a predicate crime of violence under section 924(c)'s elements clause, which renders it unnecessary to address Patterson's constitutional challenge to the residual clause, and (3) Patterson's constitutional challenge is foreclosed by *Barrett* in any event. *See generally id*.

Two months later, on February 12, 2019, the parties filed another motion to stay in light of the Supreme Court's decision to grant certiorari in *United States v. Davis*, which I granted. Mot. for Stay, Doc. No. 17. In that case, the Fifth Circuit reached the opposite conclusion as the Second Circuit in *Barrett* and struck down section 924(c)'s residual clause as impermissibly vague. *United States v. Davis*, 903 F.3d 483, 486 (5th Cir. 2018).

In a decision issued on June 24, 2019, the Supreme Court, guided by their reasoning in *Dimaya* and *Johnson II*, as well as the text, context, and history of section 924(c)'s residual clause, concluded that the clause required courts to apply a categorical approach to determine whether an offense qualified as a crime of violence. *United States v. Davis*, 139 S. Ct. 2319 (2019). The Court thus struck down section 924(c)'s residual clause as unconstitutionally vague. *Id*.

Shortly thereafter, the Supreme Court granted Barrett's petition for writ of certiorari, vacated the Second Circuit's judgment, and remanded the case for further consideration in light of *Davis*. *Barrett v. United States*, 139 S. Ct. 2774 (2019). I then lifted the stay in October 2019. Order, Doc. No. 19. No further briefing was filed.

### III.   Discussion

#### A.   Patterson's Challenges to His Section 924(c) Conviction and Sentence Are Unavailing.

18 U.S.C. § 924(c) authorizes heightened criminal penalties for using or carrying a firearm "during and in relation to," or for possessing a firearm "in furtherance of," any federal "crime of violence." *Davis*, 139 S. Ct. at 2324 (citing 18 U.S.C. § 924(c)(1)(A)). A "crime of violence" is, in turn, defined as a felony that:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A)–(B).

Courts refer to the former definition as the elements clause or the force clause,[6] and the latter definition as the residual clause. Those who violate section 924(c) "face a mandatory

---

[6] For purposes of this ruling, I refer to it as the elements clause.

minimum sentence of five years in prison, over and above any sentence they receive for the underlying crime of violence . . . ."  *Davis*, 139 S. Ct. at 2324.

In his motion, Patterson argues that the Second Circuit in *Hill I* wrongly held that Hobbs Act Robbery constitutes a crime of violence under the elements clause, and that his conviction and sentence for violating section 924(c)—which was predicated on his Hobbs Act Robbery conviction—must therefore be vacated.  *See* Am. Mot., Doc. No. 9-1, at 1, 7–13.  More specifically, according to Patterson, the *Hill I* Court wrongly concluded that *Johnson I*[7] did not construe "physical force," as used in the ACCA, 18 U.S.C. § 924(e)(2)(B)(i), to "require that a particular quantum of force be employed or threatened."  *See id.* at 7.  Assuming *Johnson I* was relevant to the construction of section 924(c)(3), the *Hill I* Court then interpreted "physical force," as used in section 924(c)(3), to mean "no more nor less than force capable of causing physical pain or injury to a person *or* injury to property."  *Hill I*, 832 F.3d at 142 (emphasis in original).

That misreading, Patterson argued, "allowed the Court to ignore that the force element of the Hobbs Act robbery can be satisfied with *de minimis* force."  Am. Mot., Doc. No. 9-1, at 7.  Although the Second Circuit has since issued an amended opinion, *Hill II*, Patterson's arguments carry over because the *Hill II* decision held that Hobbs Act Robbery qualifies as a crime of violence under section 924(c)'s elements clause on those same grounds.

Even if *Hill II* does rest on a faulty premise as Patterson contends, *Hill II* remains controlling authority and I am obliged to follow it.  Indeed, the Second Circuit has on multiple occasions reaffirmed its holding that Hobbs Act Robbery categorically serves as a predicate crime of violence under the elements clause's definition.  For instance, on remand from the

---

[7] That case, *Johnson v. United States*, 559 U.S. 133 (2010), held that a prior battery conviction under Florida law did not qualify as a "violent felony" under the ACCA.

Supreme Court, the Second Circuit in *Barrett* vacated only Barrett's section 924(c) conviction for using a firearm in committing a Hobbs Act Robbery *conspiracy* because the identification of the predicate offense as a crime of violence rested on section 924's residual clause definition, which *Davis* declared unconstitutional. *United States v. Barrett*, 937 F.3d 126, 127–28 (2d Cir. 2019).

Significantly, neither party argued that *Davis* compelled vacatur of the three other section 924(c) convictions, and the Court affirmed those convictions. *Id.* at 128. The Court reflected that the consensus was "not surprising" because "[t]he predicate offense for each of these crimes is *substantive* Hobbs Act robbery, which can be identified as a crime of violence under § 924(c)(3)(A) applying the traditional, elements only, categorical approach not at issue in *Davis.*" *Id.* (emphasis in original).

More recently, in *United States v. Walker*, the Second Circuit rejected as meritless a challenge advanced by several defendants against their section 924(c) convictions—each of which was predicated on convictions for both substantive Hobbs Act Robbery and conspiracy to commit Hobbs Act Robbery—on the basis of *Davis* and *Barrett.* 789 F. App'x 241, 244–45 (2d Cir. 2019). In doing so, the Court reasoned that "[o]ur prior holding in *United States v. Hill*, 890 F.3d 51, 53 (2d Cir. 2018), that substantive Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3)(A), is unaffected by *Davis* . . . and *Barrett* and remains binding on us in this case." *Id.* at 245.

There can thus be no question that *Hill II* remains good law, from which I do not have the authority to depart. For that reason, Patterson's argument that the Second Circuit never discussed the "ways in which the property robbed, stolen, or extorted can be intangible economic rights – acquisition of which and threats to which can be entirely non-physical, much less non-

violent, in nature," Am. Mot., Doc. No. 9-1, at 9, is also unpersuasive.  Even if that precise argument was not addressed, I am not in a position to accept it in light of the clear direction from the Second Circuit.  *United States v. Hill*, 48 F.3d 228, 232 (7th Cir. 1995) ("Precedents do not cease to be authoritative merely because counsel in a later case advance a new argument."); *see also United States v. Lira-Ramirez*, 951 F.3d 1258, 1259 (10th Cir. 2020) ("Though Mr. Lira-Ramirez raises a new argument, it does not cast doubt on our precedents.").

Applying *Hill II* as I must, I conclude that Patterson's Hobbs Act Robbery conviction, on which his section 924(c) conviction rested, qualifies as a crime of violence under the elements clause definition as set forth in section 924(c)(3)(A).  Because the identification of the predicate offense as a crime of violence therefore does not depend on the residual clause definition, Patterson's section 924(c) conviction and sentence remain valid.  For that same reason, Patterson's constitutional challenge to the residual clause, although embraced by the Supreme Court in *Davis*, is of no moment here.

### B. Patterson's Ineffective Assistance of Counsel Claim Likewise Fails.

The final argument that Patterson advances is that his defense counsel was constitutionally ineffective by failing to assert the arguments raised in his habeas petition.  Am. Mot., Doc. No. 9-1, at 13.  Patterson notes that *Johnson II* was issued in June 2015, a month after Patterson pled guilty, and that by the time his sentencing took place, *Johnson II* was being considered by other circuit courts in contexts outside of the ACCA.  *Id*.  According to Patterson, because section 924(c)'s residual clause is unconstitutionally vague and because his Hobbs Act conviction therefore does not qualify as a crime of violence, "counsel should have, at a minimum, filed a motion to vacate the guilty plea on that conviction."  *Id*.  I disagree.

A petitioner asserting ineffective assistance of counsel must establish that "(1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 692–93 (1984)).  With respect to the first prong, the determinative question is whether an attorney's "representation amounted to incompetence under prevailing professional norms," not whether it "deviated from best practices or most common custom."  *Id.* at 129–30 (citing *Harrington v. Richter,* 562 U.S. 86, 105 (2011)).  "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'"  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).  With respect to the second prong, the petitioner must establish that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."  *Davis v. Mantello*, 42 F. App'x 488, 491 (2d Cir. 2002) (citing *Strickland*, 466 U.S. at 694).

A habeas petitioner claiming ineffective assistance bears a heavy burden.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and courts have "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised," *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996).  "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'"  *Harrington,* 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks omitted).

Applying the foregoing principles, I conclude that Patterson has not carried his burden on either prong of the *Strickland* standard.  First, counsel was not deficient for failing to challenge

11

the section 924(c) count on the ground that section 924(c)'s residual clause was

unconstitutionally vague.  Although *Johnson II* was issued prior to Patterson's sentencing, that

case addressed the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(b)—a provision not at

issue here—and thus was not controlling.  Moreover, section 924(c)'s residual clause was not

declared unconstitutional by binding authority until the Supreme Court struck it down in 2018 in

*Davis*, by which time Patterson had already initiated this habeas proceeding, retained current

counsel, and presumably terminated his relationship with counsel now at issue.  And as discussed

above, the Second Circuit, on multiple occasions prior to *Davis*, rejected the argument that

*Johnson II* compels invalidation of section 924(c)'s residual clause.  *See, e.g.*, *Hill I*, 832 F.3d at

145–50; *Barrett,* 903 F.3d at 178–84.

      Because "[c]ounsel is not required to forecast changes in the governing law," *Mayo*, 13

F.3d at 533, it was not unreasonable of Patterson's counsel to fail to predict that *Johnson II*

would eventually be extended to section 924(c)'s residual clause.  *See also Pena v. United States*,

2005 WL 1176073, at *6 (S.D.N.Y. May 18, 2005), *aff'd,* 534 F.3d 92 (2d Cir. 2008)

("Generally, counsel is not ineffective for failing to forecast a change in the law.") (collecting

cases).  Patterson may not use "hindsight to second-guess his [attorney's] strategy choices."

*Mayo,* 13 F.3d at 533.

      Second, even if that omission reflected professional incompetence, Patterson has not

sufficiently demonstrated that he was prejudiced.  In light of the Second Circuit's holding in *Hill*

*II* that Hobbs Act Robbery qualifies as a crime of violence under section 924(c)'s elements

clause, Patterson has not demonstrated a "reasonable probability" that a challenge to section

924(c)'s residual clause would have vacated the plea agreement and sentence with respect to the

section 924(c) count or would have otherwise altered the outcome of the criminal proceedings.

*Davis*, 42 F. App'x at 491.

In addition, any appeal would have needed to overcome Patterson's waiver of his rights to appeal his conviction and sentence under the plea agreement.  Waivers to appeal are presumptively enforceable, *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010), and developments in the law do not overcome that presumption.  *United States v. Harrison*, 699 F.3d 158, 159 (2d Cir. 2012) (observing that the case law "foreclose[s] the possibility that a plea agreement can be nullified by a change in law *after* the agreement is executed") (emphasis in original) (internal citations omitted).  For the foregoing reasons, Patterson has failed to show a reasonable probability that, but for counsel's failure to contest section 924(c)'s residual clause, the result of the proceedings would have been different.

To the extent Patterson also challenges counsel's failure to argue that his Hobbs Act Robbery conviction does not qualify as a crime of violence under the elements clause, that claim likewise does not satisfy the *Strickland* standard because the failure to raise a frivolous claim does not constitute ineffective assistance of counsel.  *Forbes v. United States*, 574 F.3d 101, 106 (2d Cir. 2009) ("It is well established that '[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a defendant is] entitled.'") (internal citations omitted); *Trudeau v. United States*, 2017 WL 11527600, at *6 (D. Conn. Apr. 13, 2017) ("Where a claim lacks merit, an attorney's failure to preserve it cannot be ineffective assistance of counsel.").  That settled principle disposes of Patterson's challenge, because I rejected the elements clause argument above and there is no indication that the argument would have fared any better in the criminal proceedings.

For the foregoing reasons, Patterson's counsel did not fall below the objective standard of reasonable, nor did Patterson suffer any prejudice as a result of his representation.

C.   Even if the Foregoing Arguments Have Merit, They Are Barred by the Plea Agreement's
     Collateral Attack Waiver.

Even if Patterson's above challenges are availing, they have been waived under the plea

agreement.  Pursuant to the plea agreement, Patterson agreed to not "collaterally attack his

conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255

and/or 2241," and to not "pursue such an appeal or collateral attack to challenge the sentence

imposed by the Court if that sentence does not exceed 240 months, a five-year term of

supervised release, a $300 special assessment, a $125,000 fine, and restitution as determined by

the Court."  Criminal Action, Plea Agreement, Doc. No. 488, at 6.  Because Patterson's sentence

did not exceed the waiver's threshold, the waiver applies.

As is the case with appeal waivers, a defendant's knowing and voluntary waiver of the

right to collaterally attack his conviction or sentence is enforceable.  *Sanford v. United States*,

841 F.3d 578, 580 (2d Cir. 2016); *see also Frederick v. Warden, Lewisburg Corr. Facility*, 308

F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a

plea agreement.").

Accordingly, because Patterson has proffered no facts to suggest that his plea agreement

was entered into unknowingly or involuntarily, or was otherwise unenforceable, Patterson's

waiver bars his claims.

 Of particular relevance, in *Sanford*, the Second Circuit enforced a collateral attack

waiver to bar a section 2255 motion that challenged the constitutionality of a sentence based on

*Johnson II*.  841 F.3d at 579–81.  In so ruling, the Court reasoned that "a defendant's 'inability to

foresee [a change in the law] does not supply a basis for failing to enforce an appeal waiver.  On

the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks

that accompanies pleas and plea agreements.'"  *Id*. at 580 (internal citations omitted).  That

14

reasoning applies with equal force to Patterson's challenge to the residual clause of section 924(c).

Patterson's ineffective assistance of counsel claim is likewise barred by the collateral attack waiver.  A waiver is not knowing or voluntary if the process by which the plea agreement was consummated was marred by ineffective assistance of counsel.  *See United States v. Hernandez*, 242 F.3d 110, 113–14 (2d Cir. 2001) ("Even if the plain language of the plea agreement barred this appeal, we would not enforce such a waiver of appellate rights in this case because the defendant is challenging the constitutionality of the process by which he waived those rights. We have suggested that a plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel."); *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) ("[A] waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement.").

The Second Circuit has recognized, however, that ineffective assistance of counsel claims that challenge conduct outside of the plea bargaining process can be waived.  *See, e.g*., *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (upholding waiver of right to attack conviction pursuant to 28 U.S.C. § 2255 when the challenge was based, in part, on ineffective assistance of counsel at sentencing); *see also United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) (holding that knowing and voluntary waiver of right to appeal sentence barred claim raised on appeal that counsel was ineffective at sentencing, reasoning that if courts "were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing

plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless").

Here, Patterson does not suggest that he received ineffective assistance of counsel in entering the plea agreement.  Rather, Patterson challenges counsel's failure to raise certain arguments *after* the plea agreement was effectuated.  The waiver therefore forecloses Patterson's ineffective assistance of counsel claim.

## IV.    Conclusion

For the reasons discussed above, Patterson has failed to meet the requirements for a successful section 2255 petition.  Accordingly, his petition is **DENIED**.  Because Patterson has also failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.  The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 29th day of June 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge